Fred EHRMAN, Plaintiff,

v.

COOK ELECTRIC COMPANY and Northern Telecom Limited, Defendants.

No. 77 C 635.

United States District Court, N. D. Illinois, E. D.

Jan. 22, 1979.

George W. Hamman, Liebling, Uriell & Hamman, Chicago, Ill., for plaintiff.

H. Roderick Heard, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

ROBSON, Senior District Judge.

This cause is before the court on defendants' Cook Electric Company's and Northern Telecom Limited's motion for summary judgment. For the reasons hereinafter stated, the motion is denied.

The plaintiff Fred Ehrman brings this action against the defendants Cook Electric Company [hereinafter Cook] and Northern Telecom Limited [hereinafter Northern] to recover a finder's fee allegedly owed to him under an oral contract between himself and

the defendants. Jurisdiction is invoked pursuant to 28 U.S.C. § 1332 and is undisputed.

Defendants move for summary judgment on the ground that under applicable principles of the conflict of laws, New York law governs this action and pursuant to the New York Statute of Frauds, N.Y. Gen. Oblig. Law c. 24–A, § 5–701, subd. a(10) (McKinney), the plaintiff's claim is barred. Neither of the two other jurisdictions with contacts to the parties and this transaction, Illinois and Canada, requires a writing to enforce this alleged contract. Briefs have been submitted in support, in opposition and in reply to the motion.

Plaintiff, a stock broker and investment advisor residing in New York, claims to have brought Cook, a Delaware corporation that manufactures telephone hardware at its principal place of business in Illinois, together with Northern, a Canadian corporation which is the largest telecommunications manufacturer in Canada, for merger discussions that resulted in Northern's acquisition of Cook in October, 1976. Plaintiff states that in January, 1975, he contacted Cook in Illinois by telephone from New York and suggested that he attempt to interest Northern in merging with Cook. Defendants dispute plaintiff's claim that Cook gave him authorization to initiate contact with Northern. Plaintiff further asserts that when he contacted Northern, Northern knew he was a finder when it requested information about Cook from him. In response to this request, plaintiff claims that he forwarded to Northern information he had received from Cook together with a "cover letter stating that he was acting as a finder and would expect a fee if the deal between Northern and Cook were consummated." Northern returned the information to plaintiff after a few weeks and stated that it would not pay a finder's fee.

Plaintiff states that he continued unsuccessfully to seek out potential buyers for Cook. Plaintiff further states that subsequent to these efforts Northern and Cook entered into a merger agreement but failed to pay him a finder's fee. The amount allegedly owed to plaintiff is approximately $400,000.

Defendants contend that the facts relevant to a determination that New York law governs are that plaintiff "exclusively" performed the alleged finder's contract in New York. His offer to serve as finder originated from New York. He also made phone calls, sent and received all correspondence concerning the acquisition and attended two meetings in connection with the acquisition in New York.

Plaintiff contends that the facts relevant to a determination of the conflict of laws issue presented in this case are that Illinois is the state where the contract of acquisition was closed, Illinois is the state from which Cook's acceptance of his finder's services allegedly issued, and that plaintiff performed services as a finder in Illinois, Canada and New York.

In this diversity action, the conflict of law rules of Illinois, the state in which the court sits, must be applied. *Klaxon Company v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). According to Illinois law, the validity, construction and obligation of a contract are determined by the law of the place where it is made and performed. *Walker v. Lovitt,* 250 Ill. 543, 95 N.E. 631 (1911). Where the place of making and place of performance differ, and if the agreement is to be performed wholly in one jurisdiction, then the law of the place of performance governs. *George v. Haas,* 311 Ill. 382, 143 N.E. 54 (1944); *Oakes v. Chicago Fire Brick Co.,* 388 Ill. 474, 477, 58 N.E.2d 460 (1924). Where the place of making and place of performance differ, and if there is doubt as to the place of performance, then the place of contracting governs. *Oakes v. Chicago Fire Brick Co., supra* at 477, 58 N.E.2d 460; *P.S. & E. Inc. v. Selastomer Detroit, Inc.,* 470 F.2d 125, 127 (7th Cir. 1972). In a multifaceted situation, where the place of making is arguable and performance takes place in several states, the Seventh Circuit Court of Appeals has ruled that Illinois applies the law of the

state with the most significant contacts to the transaction. *P.S. & E. Inc. v. Selastomer Detroit, Inc., supra.*

Defendants contend that the "place of performance" rule stated in *George v. Haas, supra,* and *Oakes v. Chicago Fire Brick Co., supra,* governs this case and that under the undisputed facts, the place of performance of this alleged contract was New York. Alternatively, defendants contend that New York law governs because New York is the state with the most significant contacts to this contract. Plaintiff responds to these contentions with a two-part attack. First, plaintiff asserts that in conflict of law cases involving contracts, Illinois follows the basic rule of contract validation, and this rule supercedes both the "place of performance" rule and the "most significant contacts" rule.* Second, plaintiff contends that Illinois or Canadian law governs this action because there is doubt as to the place of performance of the contract and therefore the rule of *Oakes v. Chicago Fire Brick Co., supra,* and *P.S. & E. Inc. v. Selastomer Detroit, Inc., supra,* that the place of contracting governs, must be applied. Alternatively, plaintiff contends that Illinois or Canadian law governs because these jurisdictions have more significant contacts to this alleged contract than New York does.

█ The plaintiff's alleged contract arose from negotiations conducted between New York and Illinois by telephone. The plaintiff's services were allegedly the effective cause of the merger agreement that was negotiated in Canada, New York and Illinois. This alleged contract for finder's services between a New York resident, a Canadian acquiring company and an Illinois acquired company, is a multifaceted situation, where the place of making was arguably in Illinois, New York and Canada and performance took place in all three states as well. Therefore, this court must apply the law of the state with the most significant contacts to the transaction. *P.S. & E. Inc. v. Selastomer Detroit, Inc., supra.* Two recent decisions that involved the application of the New York Statute of Frauds to oral finder's contracts are helpful in determining which state has the most significant contacts.

In *Havenfield Corp. v. H. & R. Block, Inc.,* 509 F.2d 1263, 1268 (8th Cir. 1974), the court held that the location of the acquired company was a very significant contact because "[i]n a contract action, unlike a tort action, the location of the parties and events are known ahead of time and make up a part of the general expectations of the parties." The court also held that the state where the closing of the acquisition took place has a significant contact because of the close relationship between the finder's contract and acquisition contract. In *Denny v. American Tobacco Company,* 308 F.Supp. 219 (N.D.Cal.1970), the court applied an interest analysis rather than the "significant contacts" rule in accordance with California conflicts rules. Nonetheless, the court stated that the same facts that were determinative under an interest analysis were applicable under the significant contacts rule. *Id.* at 223. The court noted that the state where the offer to perform finder's services was sent, and the states where the benefits of acquisition accrued, had the most significant contacts.

█ In this finder's fee case, Illinois has a very significant contact to the contract because Cook, the acquired company, is located here. *Havenfield Corp. v. H. & R. Block, Inc., supra.* In addition, the offer was sent to the acquired company in Illinois and to the acquiring company in Canada, inviting and allegedly receiving an acceptance in Illinois. *Denny v. American Tobac-*

---

* The court's finding that New York does not have the most significant contacts with this contract obviates a ruling on plaintiff's principal contention that Illinois applies the rule of contract validation. Nonetheless, the court notes that the plaintiff's reliance on *Cook Associates, Inc. v. Colonial Broach & Machine Co.,* 14 Ill.App.3d 965, 971, 304 N.E.2d 27 (1st Dist. 1973), is misplaced. That decision rests on *Kossick v. United Fruit Co.,* 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961), which applied the now disfavored "vested rights" approach to conflicts problems. Contract validation is not required under the Restatement of the Law 2d, *Conflicts of Laws* § 188.

*co Company, supra.* Acquisition took place in Illinois and the benefits of acquisition will accrue in Illinois and Canada. *Id.* Based on these facts, the court finds that Illinois and Canada have more significant contacts with this transaction than New York. *Havenfield Corp. v. H. & R. Block., Inc., supra,* and thus the New York Statute of Frauds is inapplicable. Because neither Illinois nor Canada requires a writing to enforce this alleged contract, the plaintiff's claim is not barred.

For the reasons stated, it is therefore ordered that the motion for summary judgment of Cook and Northern shall be, and the same is hereby, denied.